# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| NATHAN BENJAMIN MYERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 C 05958 |
| | ) | |
| CITY OF CHICAGO, PATRICIA A. SCUDIERO, and JOE MOORE, | ) ) ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Nathan Benjamin Myers purchased a house in Chicago in the hopes of renting it to the Loyola University chapter of Sigma Pi Fraternity. The applicable zoning regulation restricts use of the house by a fraternity, so City officials told him he could not go through with his plan without obtaining a special use permit. Claiming that Sigma Pi's occupancy would not make the property a frat house, but a monastery, Myers took them to court instead. After dismissing some of his claims, the Court allowed discovery to proceed on Myers's equal protection claim while staying discovery on his claim that city inspectors conducted an illegal search of the property in violation of the Fourth Amendment. Before the Court now are the parties' cross-motions for summary judgment on the equal protection claim, as well as the defendants' motion to strike Myers's statement of undisputed facts. *See* L.R. 56.1(a)(3).

First, the Court grants the motion to strike. Generally, this Court agrees that motions to strike are disfavored in summary judgment proceedings. *E.g., Indep. Trust Corp. v. Fidelity Nat. Title Ins. Co. of New York*, 577 F. Supp. 2d 1023, 1052 (N.D. Ill. 2008). This case is the exception; the defendants had little alternative because Myers's statement is not amenable to the responsive statement required by the local rules.

1

Myers's extensive fact statement violates Federal Rule of Civil Procedure 56(c) and Local Rule 56.1 in nearly every way possible. At 34 pages and well over 100 often lengthy paragraphs that are not numbered consecutively, it is far from the "concise" statement of "material" facts that is required. Multiple purported facts, peppered with argument, are stated within each paragraph, and many pertain to matters far outside the scope of Myers's claim, such as his childhood experiences with anti-Semitism. The statement relies on purported evidence that lacks any foundation and much of which is irrelevant, hearsay, or both. It cites to entire exhibits (only some of which exist) and not to specific pages or paragraphs. There is simply no way for the defendants to respond as required or for the Court to sift out any truly material facts that are properly supported, even if it were inclined to do so.

Even *pro se* litigants must comply with the Local Rules. *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010); *Greer v. Board of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001). Anyway, Myers is a licensed attorney and an active member of the bar—indeed, he is a member of both the General and Trial Bars of the Northern District.[1] In response to the motion to strike, Myers says that he "doesn't practice much," Doc. 102 ¶ 1, but he still represents clients occasionally, so he is entitled to less latitude than other *pro se* litigants. *See 5443 Suffield Terrace*, 607 F.3d at 510 (*pro se* plaintiff was lawyer). For similar reasons, the Court also denies Myers's request, in response to the motion to strike, for additional time to file conforming statements. Myers received three extensions of time already, and after finally filing his summary judgment response, he later obtained leave to file *instanter* a corrected statement of facts. Moreover, Myers did not merely stumble on a technicality; his Rule 56.1 response is not even in

---

[1] The Court takes judicial notice that "Nathan Benjamin Myers" was admitted on May 9, 1985, and is currently active and authorized to practice. *See* ARDC Lawyer Search, http://www.iardc.org/ldetail.asp?id= 837451904. He is also a member of this Court's general and trial bars. *See* http://www.ilnd.uscourts.gov/home/ MemberSearchBar.aspx ("Myers, Nathan Benjamin").

the ballpark of what is required. *See Greer*, 267 F.3d at 727. No further delay is warranted for him to undertake the process from scratch. Because Myers failed to comply with the Local Rules for disputing the defendants' statement of facts and submitting additional facts of his own, the Court deems admitted in its entirety the defendants' statement of undisputed material facts[2] and strikes Myers's additional fact statement in full. *See id.*; *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994).

The defendants set forth the following facts, which even though admitted, the Court nevertheless views in the light most favorable to Myers, the non-moving party. The Court also relies on admitted facts from the pleadings to provide context.[3] Myers purchased a parcel including a house at 1102 West North Shore Avenue in Chicago (the "Property") on September 12, 2008. The Property is, and was at that time, zoned RT-4, one of the residential classifications under Chicago's zoning ordinance. The RT-4 classification permits, as of right, certain types of "group living" uses; others are special uses that require a permit. Fraternities and sororities are a "group living" use, and under the RT-4 classification, "group living not otherwise classified" is a special use. Fraternities and sororities were once a permitted use, but an amendment to the zoning ordinance designated them as special uses in 1970—when the classification that became RT-4 in 2004 was still known as "R4." Convents and monasteries, by contrast, are group living uses that are permitted outright in RT-4 areas, along with certain types of group shelters and

---

[2] In his response statement [Doc. 96 at 1], Myers "adopt[ed] all the material facts stated by opposing counsel's 56.1(a)(3) statement," except one, so this result is not as harsh in practice as in theory.

[3] The Court limits itself to contextual facts admitted in the defendants' answer, which are binding judicial admissions that remove them from contention for purposes of summary judgment. *See Crest Hill Land Development, LLC v. City of Joliet*, 396 F.3d 801, 805 (7th Cir. 2005) (explaining that admission in answer to complaint "constitutes a binding judicial admission" that has the effect of "withdrawing the question . . . from contention").

assisted living facilities. Under § 17-17-0102-A of the zoning ordinance, a "convent or monastery" is defined as housing for "persons (such as nuns or monks) under religious vows."

Alpha Delta Gamma Fraternity ("ADG") has a house at 1230 West North Shore Avenue, just up the street from the house Myers purchased in 2008. ADG acquired its property in 1969, when fraternities were a permitted use in what was then the R4 district. The ADG house now has the same RT4 zoning classification as Myers's property. ADG does not have a special use permit; rather, the fraternity is a legal nonconforming use under the zoning ordinance's grandfather clause, Mun. Code of Chicago §17-15-0300, which preserves the validity of a use permitted at its inception when a later amendment would otherwise limit or prohibit the use.

Myers began negotiating a lease with Sigma Pi shortly after purchasing the property. However, his alderman, Joe Moore, told him that he needed a special use permit. He also let Myers know in no uncertain terms that he objected to the project and would object to any special use permit. Myers disagreed that the zoning ordinance required a special use permit. On multiple occasions, he tried to convince the alderman, the City's Zoning Administrator, and lawyers for the City, among others, that occupied by Sigma Pi, the Property would most properly be viewed as a "monastery" because the fraternity's mission statement (or "vow," as Myers calls it) is "In the Service of God and Man." Myers did not get far with any of them, and he was told that if he went ahead with his plan without a permit, legal action would be taken. Ultimately, Myers never executed a lease with Sigma Pi. He also did not seek a special use permit, which entails applying to the Zoning Administrator, who makes a recommendation to the Zoning Board of Appeals, the final decision-making authority on applications for special uses.[4]

---

[4] In ruling on the City defendants' motion to dismiss, the previously assigned district judge held that the ripeness requirement of *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985), under which a claim is not ripe until there has been a "conclusive decision"

4

As relevant to the current motions, Myers alleges that the defendants—Alderman Moore, Zoning Administrator Scudiero, and the City of Chicago—violated his constitutional right of equal protection by taking the position that he needed a special use permit to lease the Property to Sigma Pi when the nearby ADG house does not have a special use permit. Myers continues to dispute that the fraternity would be a special use; he maintains that, with Sigma Pi in residence, the Property is best viewed as an allowed "monastery."

In support of summary judgment, the defendants argue that Myers is not similarly situated to ADG and therefore cannot base his equal protection claim on the disparate treatment of ADG's house and the Property. The defendants further argue that, in any case, Myers cannot show that the defendants lacked a rational basis for declining to adopt Myers's interpretation of the zoning ordinance that treats his prospective tenants as a religious order.

Summary judgment is appropriate if the record shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 547 (7th Cir. 2011). When a summary judgment motion is submitted and supported by evidence as provided in Rule 56(c), the nonmoving party may not rest on mere allegations or denials in its pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

Myers's 11-page response brief largely fails to engage with the defendants' arguments and does not cite a single case or other legal authority. There is little to go on, and the Court would be within its rights in deeming Myers's arguments waived for failure to sufficiently develop them. *See Echo, Inc. v. Timberland Machines & Irr., Inc.*, 661 F.3d 959, 967 (7th Cir.

---

on the zoning of the property, did not apply because Myers alleged a *bona fide* equal protection claim. Memorandum Order and Opinion, Doc. # 46 at 8 (Jan. 6. 2011).

2011). However, the Court has endeavored to set forth Myers's arguments where possible and resolve his claim on the merits.

The Equal Protection Clause prohibits state action that discriminates on the basis of membership in a protected class or that irrationally targets an individual for discriminatory treatment as a so-called "class of one." *Reget v. City of La Cross*, 595 F.3d 691, 695 (7th Cir. 2010). Myers alleges discrimination on the class-of-one theory, the precise contours of which remain somewhat opaque in this circuit in the wake of *Del Marcelle v. Brown County Corp.*, 680 F.3d 887 (7th Cir. 2012) (*en banc*). At a minimum, though, Myers must show that he was arbitrarily or irrationally targeted for unfavorable treatment. *See id.* at 889, 913; *Reget*, 595 F.3d at 695. In other words, class-of-one discrimination occurs if the plaintiff "has been intentionally treated differently from others similarly situated and . . . there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Myers fails to establish that there is any genuine issue of material fact as to these elements. First, Myers does not establish that he is similarly situated to any property owner who was treated differently. "[S]imilarly situated individuals must be very similar indeed." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir.2004); *see Harvey v. Town of Merrillville*, 649 F.3d 526, 531 (7th Cir. 2011); *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir.2010). Under this standard, Myers's attempt to compare himself with ADG fails. The admitted facts show that the ADG house began as a permitted use in 1969 and remained a valid use by operation of the grandfather clause after the later amendment of the zoning ordinance. By contrast, Myers purchased his property long after fraternities and sororities were required to have a special use permit to operate in an RT4 district.

Myers insists that any grandfathering was effectively terminated by ADG's alleged decampment from the property while fire damage was repaired in the 1980s. But as the defendants rightfully point out, the record contains no admissible evidence of the vacancy Myers alleges. They further argue that the temporary departure of a property's occupants is not an event that triggers a change in the "use" of a property for zoning purposes, and although he obliquely refers to "grandfather clause case law," Myers cites no authority to the contrary.

In any event, arguing that the ADG house should not be grandfathered does not help Myers establish that his property is similarly situated. Myers premises his claim upon the Property being a "monastery"—not on its eligibility for grandfathering. Myers refers to ADG as another "religious fraternity," comparable to Sigma Pi, but he has no evidence that ADG's use has been allowed because its use has been classified as "convent or monastery." Indeed, the evidence shows otherwise. The admitted facts (which are consistent with Myers's own allegations) are that the City allowed ADG's use to persist because it was legal at the time of inception. The City has consistently rejected Myers's suggestion that either Sigma Pi or ADG fraternity members are "under a religious vow" within the zoning ordinance's meaning. Therefore, ADG is not an appropriate comparator.

Even if ADG were similarly situated, though, Myers could not show that the defendants lacked a rational basis for requiring Myers but not ADG to obtain a special use permit. Unequal enforcement is a type of as-applied challenge to legislation. *Pro-Eco, Inc. v. Board of Com'rs of Jay County, Ind.*, 57 F.3d 505, 515 (7th Cir. 1995) ("An ordinance generally applicable on its face but enforced for no legitimate reason against only an individual or a particular class may

violate the Equal Protection Clause."). Myers does not articulate the argument well, but it is clear he believes that the City is unequally enforcing the special-use requirement to his detriment.[5]

Government conduct fails rational-basis scrutiny only "if no sound reason for the action can be hypothesized," or it is "wholly impossible to relate to legitimate governmental objectives." *See Lauth v. McCollum*, 424 F.3d 631, 634 (7th Cir. 2005). Here, the defendants provided a rational basis for requiring Myers, but not ADG, to get a special use permit: grandfathering. The application of that exception to ADG is hardly irrational; the record shows that ADG's use was established in 1969, before special use permits were required. The plain language of §17-15-0300 of the Municipal Code supports the continuance of the use despite a later amendment to the code provision that made it possible. And it is not irrational for a city to accommodate existing uses when enacting zoning changes in order to provide a level of assurance necessary to "protect expectation interests." *McCann v. City of Chicago*, 968 F.2d 635, 638 (7th Cir. 1992) ("Grandfather clauses—laws that . . . curtail the application of new rules to existing entitlements—protect expectation interests, which is enough to make them rational and so defeat challenge under the equal protection clause."). And neither is it irrational for the City to dilute the concentration of fraternity houses in a neighborhood by attrition rather than revoking the use wholesale. *See Marusic Liquors, Inc. v. Daley*, 55 F.3d 258, 261-62 (7th Cir. 1995).

Myers does not challenge the validity or constitutionality of the grandfather clause (nor is it obvious that he would have standing to make such a challenge). In arguing that ADG's tenure was interrupted for a period during the 1980's, Myers perhaps intends to argue that grandfathering is a pretext, and therefore does not provide a rational basis for treating him (or his

---

[5] Defendants are correct to point out that Myers has not lodged any challenge to the requirement that fraternities and sororities obtain a special use permit; his gripe is with the Property, if occupied by Sigma Pi, being classified as a "fraternity" instead of a "monastery."

tenants) less favorably. But if this is his theory, it is not fleshed out, and Myers's insinuation is insufficient to withstand summary judgment. *See Smith v. City of Chicago*, 457 F.3d 643, 652 (7th Cir. 2006) ("It is the plaintiff's burden to prove the government's action irrational.").[6] And even if, as Myers suggests, the defendants are wrong that the ADG's use of its property for a fraternity is still grandfathered despite an alleged gap in their use—though this assertion is unsupported—they still provided a plausible rationale for distinguishing between ADG and Sigma Pi. *See Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 685 (7th Cir. 2005) ("A court will not strike down a state policy merely because it 'may be unwise, improvident, or out of harmony with a particular school of thought.'"). Myers does not agree with the reason he was given, but it withstands rational basis scrutiny.

Furthermore, Myers—despite suggesting that the Property is identical in all respects to the ADG house—does not argue that his property, purchased almost 40 years after the applicable amendment, is eligible for grandfathering. His alleged injury is caused by the defendants' refusal to treat the Property as a "monastery." But he cannot show that the defendants acted irrationally in interpreting and enforcing the zoning ordinance in a way that differentiates between a college

---

[6] The Court does not suggest that the argument is a good one. Reasonableness and rationality are objective tests that do not invite inquiry into the actor's subjective motives, and the Seventh Circuit has rejected the argument that pretext figures into the equal protection inquiry. *See Smith v. City of Chicago*, 457 F.3d 643, 651 (7th Cir. 2006) ("Their position was that in a nonfacial equal protection challenge, evidence that the government's reason for decision was pretextual can establish the claim. The district court properly rejected this argument. This court has declined previous invitations to import Title VII methodology into traditional rational-basis equal protection analysis . . . and we are not inclined to revisit the issue here.") (citing *Schroeder v. Hamilton Sch. Dist.*, 282 F.3d 946, 951 (7th Cir. 2002). *See also Hammer v. Ashcroft*, 570 F.3d 798, 803 (7th Cir. 2009) (*en banc*) (rejecting "pretext" argument in context of First Amendment challenge to government restrictions on prisoner speech). However, in *Smith*, the Seventh Circuit left the door slightly ajar for inquiry into subjective motives in class-of-one equal-protection claims based upon "illegitimate animus," *see* 457 F.3d at 652, and even after the *en banc* decision in *Del Marcelle*, the role of subjective intent in that narrow class of cases remains unresolved.

9

frat house and a monastery. No matter how closely Sigma Pi hews to the letter of its motto, Myers has fallen far short of proving that the Sigma Pi fraternity brothers are actual Religious Brothers, that is, in the words of the ordinance, "persons (such as nuns or monks) under religious vows." The defendants' interpretation of this language to exclude fraternity houses therefore passes the rational-basis test.

Finally, Myers appears to argue that the defendants, especially Alderman Moore, subverted his rental deal for vindictive reasons. Presumably, this is an attempt to show that the defendants acted out of illegitimate animus. But even if animus is relevant to a class-of-one claim (*Del Marcelle* leaves the issue unresolved), "animus is not a sufficient condition for a class-of-one claim to succeed." *Crowley v. McKinney*, 400 F.3d 965, 972 (7th Cir. 2005). And the slights that Myers alleges, including Moore's strong objection to his project, a long delay before he got an appointment with the zoning administrator, and being told that legal proceedings would be initiated if he went through with the lease without getting a special use permit, are not the type of "personal ill will" or "vindictive action" that bolsters a class-of-one claim. *See Racine Charter One, Inc.*, 424 F.3d at 684; *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000). Moreover, Myers's allegations of animus are just that—allegations—that have not been substantiated with specific facts or evidence.

In the end, Myers cannot (and does not, even in his statement of facts that the Court has stricken) point to any instance in which the City allowed a fraternity or sorority house to move into an RT4 district without a special use permit after 1970, when the use was changed from permitted to special. He certainly has no evidence that ADG or any other fraternity or sorority house was relieved of the requirement because the City categorized it as a "convent or monastery." Therefore, Myers can do no more than show that his venture was thwarted by an

ordinance that applies equally to all similarly situated property owners. And "thwarted" is a strong word since he didn't seek a special use permit before suing and so did not know whether the use might have been allowed. His equal protection claim therefore fails.

## **CONCLUSION**

Accordingly, the Court grants the defendants' motion for summary judgment on Myers's equal protection claim as to all defendants and denies Myers's cross-motion. As previously stated, the defendants' motion to strike is granted.

Date: September 12, 2012

Honorable John J. Tharp, Jr.
U.S. District Judge