# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **NATHAN BENJAMIN MYERS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 C 05958 |
| | ) | |
| **CITY OF CHICAGO, a municipal** | ) | |
| **corporation,** *et al.*, | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Nathan Benjamin Myers filed this action against Alderman Joe Moore, Zoning Administrator Patricia Scudiero, and the City of Chicago ("City") pursuant to 42 U.S.C. § 1983, alleging that the defendants violated his Fourth Amendment rights when City zoning inspectors allegedly inspected his property without a warrant or his consent. Now before the Court is the defendants' motion for summary judgment. For the reasons set forth below, the defendants' motion is granted.

**I.  BACKGROUND**

**A.  Procedural**

Myers filed an amended complaint in this matter on February 16, 2010, seeking a declaratory judgment (Count I) and injunctive relief (Count II), and alleging claims for promissory estoppel (Count III), unreasonable search and seizure under the Fourth Amendment (Count IV), equal protection under the Fourteenth Amendment (Count V), and conspiracy (Count VI). Am. Compl. Dkt. 18. On January 1, 2011, Judge Pallmeyer dismissed all but Counts IV and V of Myers's amended complaint for wrongful search and equal protection, respectively. *See Myers v. City of Chi.,* No. 09 C 05859, 2011 WL 43063 (N.D. Ill. Jan. 6, 2011) (Pallmeyer,

J.). The defendants filed an amended answer on April 1, 2011. Am. Answer, Dkt. 61. Then on November 9, 2011, Judge Chang granted the defendants leave to file a motion for summary judgment on the plaintiff's equal protection claim. *See* Order, Dkt. 71. That motion was filed, briefed, and subsequently granted by this Court on September 12, 2012, leaving the plaintiff's Fourth Amendment claim for wrongful search as the sole claim in this matter. *See* Mem. Op. and Order, Dkt. 109.

This Court then granted the defendants leave to file a motion for summary judgment on Myers's Fourth Amendment claim and set a briefing schedule. *See* Order, Dkt. 112. In accordance with that schedule, the defendants filed a motion for summary judgment and "Statement of Undisputed Material Facts" pursuant to Northern District of Illinois Local Rule 56.1(a)(3) on December 12, 2012. Dkt. 116, 118. However, the plaintiff filed his response on January 11, 2013 with neither a response to the defendant's Local Rule 56.1(a)(3) statement nor a statement of additional facts pursuant to Local Rule 56.1(b)(3). *See* Pl. Resp., Dkt. 120. The defendants then filed their reply brief on January 23, 2013. Defs. Reply, Dkt. 121.

Three weeks after his response was due, Myers filed a motion for an extension of time to file a response to the defendants' Local Rule 56.1(a)(3) statement of facts and for leave to take additional discovery. Pl. Mot., Dkt. 123. The Court denied that motion as untimely on February 14, 2013. *See* Order, Dkt. 126. The defendants' motion for summary judgment, therefore, was taken under advisement without a Local Rule 56.1(b)(3) response or statement of additional facts from the plaintiff.[1]

---

[1] Myers, who is an attorney, provided no good cause (indeed, no cause at all) for his failure to file a response to the defendants' statement of facts. His failure to file a response to the defendants' statement of facts is particularly difficult to understand in view of the fact that the noncompliant statement of facts he had submitted in connection with summary judgment
(*Continued on next page.*)

Local Rule 56.1(b)(3) requires a party opposing a motion for summary judgment to file:

> a concise response to the movant's statement that shall contain: (A) numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed, and (B) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and (C) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. Absent prior leave of Court, a respondent to a summary judgment motion shall not file more than 40 separately-numbered statements of additional facts. *All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.*

N.D. Ill. L.R. 56.1(b)(3)(A)-(C) (emphasis added). Accordingly, as a consequence of the plaintiff's failure to file a Local Rule 56.1(b)(3) response, the defendants' facts are deemed admitted to the extent they are supported by admissible evidence in the record. *See Keeton v. Morningstar, Inc.,* 667 F.3d 877, 884 (7th Cir. 2012) ("[B]ecause [the plaintiff] failed to timely respond to [the defendant's] Local Rule 56.1 statement of uncontested facts, [the Court] deem[s] those facts admitted to the extent that the [defendant's] statement is supported by evidence in the record." (citations omitted)); *Nautilus Ins. Co. v. Ricciardi Dev., LLC,* No. 11 C 06126, 2012 WL 5471091, at *1 (N.D. Ill. Nov. 9, 2012) ("[The opposing party] filed no Local Rule 56.1(b)(3)(B) response, so the facts set forth in [the moving party's] Local Rule 56.1(a)(3) statement are deemed admitted." (citations omitted)). That said, the Court must still construe those facts in the light most favorable to Myers, the nonmoving party, as well as draw all reasonable inferences in his favor. *Tebbens v. Mushol,* 692 F.3d 807, 815 (7th Cir. 2012) (citing *Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 653 (7th Cir. 2010)); *see also Keeton,* 667 F.3d at 884.

---

motions on his equal protection claim required the Court to grant the defendants' motion to strike that statement. *See* Mem. Op. and Order, Dkt. 109 at 1-3. Having paid a high price for his prior failure to comply with the requirements of the local rule, one might have expected Myers to have exercised greater care in doing so the next time around.

3

## B. Factual

Myers owns real property located at 1102 W. North Shore Avenue, Chicago, Illinois 60626 (the "Subject Property"). Defs. 56.1 Statement of Facts, Dkt. 118 at ¶ 4. The Subject Property is located in the City's 49th Ward and zoned RT-4 pursuant to the City's Zoning Ordinance. *Id.* at ¶¶ 5, 9. Myers obtained two permits from the City's Department of Buildings to perform renovations to the Subject Property on April 20, 2009, and May 27, 2009. *Id.* at ¶ 8. Thereafter, in August or September of 2009, Joe Moore, the alderman for the 49th Ward, learned of possible violations of the City's Zoning Ordinance at the Subject Property. *Id.* at ¶ 9. Pursuant to the City's Zoning Ordinance, fraternities and sororities are prohibited from occupying properties zoned RT-4. *Id.* But Alderman Moore had learned that a fraternity had possibly taken residence at the Subject Property and that the plaintiff was potentially renovating the property under the permits previously issued by the City in order to accommodate a fraternity. *Id.*

To ensure compliance with the City's Zoning and Building codes, Moore then requested that the City's Department of Zoning and Land Use Planning[2] ("Department of Zoning") and Department of Buildings conduct an inspection of the Subject Property. *Id.* at ¶ 10. The City's Department of Zoning employed zoning inspectors to investigate reports of violations of the City's Zoning Ordinance. *Id.* at ¶ 11. In or about August or September 2009, Patricia Scudiero, who, at the time, was the City's Zoning Administrator and Commissioner of the Department of Zoning, asked Michael Hoskins, a zoning inspector, to inspect the Subject Property to determine

---

[2] As the defendants have explained in their statement of facts, "[p]ursuant to an ordinance passed by the City Council on November 17, 2010, the Department of Zoning and Land Use Planning ceased to exist on December 31, 2010 and its functions were assumed by the newly-created Department of Housing and Economic Development ('HED')." Defs. 56.1 Statement of Facts, Dkt. 118 at ¶ 3. "Scudiero is currently the City's Zoning Administrator and heads the Bureau of Planning and Zoning within HED." *Id.*

if a fraternity had taken residence there. *Id.* at ¶¶ 3, 12. On September 4, 2009, an unidentified supervisor also asked Jeff Samples, an inspector with the City's Department of Buildings, to inspect the Subject Property to determine whether the renovations being done there were in compliance with the building permits issued by the City. *Id.* at ¶ 13.

On the morning of September 4, 2009, Hoskins and Samples went to and entered the Subject Property to inspect for violations of the City's Zoning and Building codes. *Id.* at ¶¶ 14, 15. Neither Moore nor Scudiero were present at the inspection of the Subject Property. *Id.* at ¶ 16. Moreover, Scudiero did not instruct Hoskins how to conduct the inspection of the Subject Property or instruct Hoskins to enter the Subject Property without first obtaining consent from the owner or his agent. *Id.* at ¶ 17. For his part, Moore neither supervises nor has responsibility for the work of any inspector employed by the City, including those inspectors who inspect for violations of the City's Zoning and Buildings codes. *Id.* at ¶ 19. Moreover, Moore did not speak with Hoskins or Samples before or after their inspection of the Subject Property, instruct the City inspectors how to conduct their inspection, or instruct any inspector to enter the Subject Property without the owner's permission. *Id.* at ¶¶ 20, 21.

## II.    ANALYSIS

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." *Hakim v. Accenture U.S. Pension Plan,* 718 F.3d 675, 681 (7th Cir. 2013) (citing Fed. R. Civ. P. 56(c)). Summary judgment is also "properly entered against a party 'who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Id.* (citing *Parent v. Home*

*Depot, U.S.A., Inc.,* 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted)). Therefore, a "party opposing the motion for summary judgment must 'submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (citing *Siegel v. Shell Oil Co.,* 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted)).

Here, Myers contends that Moore, Scudiero, and the City are liable for deprivations of his constitutional rights allegedly carried out by Hoskins and Samples when they inspected the Subject Property without the plaintiff's consent. While Myers failed to submit evidentiary materials and the defendants' facts had been deemed admitted, "a nonmovant's…failure to comply with Local Rule 56.1, does not, of course, automatically result in summary judgment for the movant." *Keeton,* 667 F.3d at 884 (citing *Raymond v. Ameritech Corp.,* 442 F.3d 600, 608 (7th Cir. 2006); *Reales v. Consol. Rail Corp.,* 84 F.3d 993, 997 (7th Cir. 1996)). The defendants "must still demonstrate that [they] are entitled to judgment as a matter of law." *Id.* (citing *Raymond,* 442 F.3d at 608). They have succeeded here.

### A. Individual Claims Against Defendants Alderman Joe Moore and Zoning Administrator Patricia Scudiero

Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Myers contends that City inspectors Hoskins and Samples (who are not defendants) searched the Subject Property without a warrant or his consent on September 4, 2009, thereby violating his Fourth Amendment right to be free from unreasonable searches. *See* Am. Compl., Dkt. 18 at 10-11. Myers argues that Moore and Scudiero are individually liable for

that violation by virtue of their positions and role in causing the inspection of the Subject Property to take place. Pl. Resp., Dkt. 120 at 2-6.

The briefing by the parties has narrowed the Court's inquiry to a single issue. Specifically, for purposes of this motion, the defendants have assumed that Hoskins and Samples searched or inspected the Subject Property without a warrant or the plaintiff's consent and that such a search violated the Fourth Amendment. They argue that, even if the alleged constitutional deprivation occurred, the undisputed facts demonstrate that Moore and Scudiero cannot be held individually liable for that violation. Myers contends that Moore and Scudiero caused the alleged constitutional violation by Hoskins and Samples merely by directing an inspection to occur. The sole inquiry for the Court, then, is whether Defendants Moore and Scudiero may be held liable for the alleged misconduct of Hoskins and Samples in conducting the assumedly unconstitutional search.

That question, Myers avers, can be determined using a "but for" test derived from the plain language of § 1983. *Id.* at 2. In other words, pursuant to § 1983's "subjects, or causes to be subjected" clause, the issue can be resolved by determining whether, "but for Scudiero directing Hoskins to inspect the property, would plaintiff's Fourth Amendment rights have been violated," and "[b]ut for Moore requesting Scudiero…to conduct an inspection of the subject property, would plaintiff's Fourth Amendment rights have been violated?" *Id.* at 2-3. The plaintiff's argument, however, misconstrues the relevant inquiry and, if applied, would yield a result contrary to settled Seventh Circuit law on individual liability under § 1983.

The Seventh Circuit has explained that "[a] defendant will not be liable for a constitutional violation under § 1983 if the defendant merely exercised supervisory authority over those who violated the plaintiff's rights and otherwise failed to participate in any violation

of the plaintiff's rights." *Kelly v. Mun. Courts of Marion Cnty.,* 97 F.3d 902, 909 (7th Cir. 1996). That is, "a plaintiff may not rely on the doctrine of *respondeat superior* to hold supervisory officials liable for the misconduct of their subordinates." *Doyle v. Camelot Care Ctrs., Inc.,* 305 F.3d 603, 614 (7th Cir. 2002) (citing *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001)). "Rather, the supervisory officials also must have had some personal involvement in the constitutional deprivation, essentially directing or consenting to the challenged conduct." *Id.* at 614-15 (citing *Chavez v. Ill. State Police,* 251 F.3d 612, 651 (7th Cir. 2001)). And for a supervisor to have personal involvement in the constitutional deprivation, they must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis,* 675 F.3d 703, 708 (7th Cir. 2012) (citing *Jones v. City of Chi.,* 856 F.2d 985, 992-93 (7th Cir. 1988)). In short, supervisors must "act either knowingly or with deliberate, reckless difference." *Lanigan v. Vill. of East Hazel Crest, Ill.,* 110 F.3d 467, 477 (7th Cir. 1997) (citing *Jones,* 856 F.2d at 992-93).

On this point, the undisputed record shows that Moore and Scudiero were not present for the inspection, did not instruct Hoskins or Samples how to conduct the inspection, or instruct Hoskins or Samples to conduct the inspection without the plaintiff's consent. Defs. 56.1 Statement of Facts, Dkt. 118 at ¶¶ 16-21. Even assuming that Hoskins and Samples entered and inspected the Subject Property without the plaintiff's consent, there is also no evidence that demonstrates or raises an inference that either Moore or Scudiero knew about, approved, condoned, or turned a blind eye to that alleged misconduct. *See, e.g., Matthews,* 675 F.3d at 708. In other words, nothing in the record supports a reasonable inference that either Moore or Scudiero knowingly instructed the City inspectors to inspect the Subject Property in an

unconstitutional manner or that they were recklessly indifferent to a risk that the City inspectors would do so. *See, e.g., Lanigan,* 110 F.3d at 477.

Myers argues that Scudiero *must* have known that Hoskins would conduct an inspection when she instructed him to inspect the Subject Property for violations of the City's Zoning Ordinance. Pl. Resp., Dkt. 120 at 3. But this argument misses the mark. The inquiry is not whether Scudiero knew that Hoskins would conduct an inspection—of course, it can be reasonably inferred that she assumed that he would conduct an inspection in accordance with her directive—but whether she knew about, approved, condoned, or was recklessly indifferent to the alleged *misconduct* that forms the basis of the plaintiff's Fourth Amendment claim. *See, e.g., Nanda v. Moss,* 412 F.3d 836, 842 (7th Cir. 2005) ("Under § 1983…supervisory liability can be established if *the conduct causing the constitutional deprivation* occurs at the supervisor's direction or with the supervisor's knowledge and consent." (emphasis added and citation omitted)). The alleged misconduct that caused the constitutional violation in this case was not merely an inspection of the Subject Property, but an inspection of the Subject Property without the plaintiff's consent. Indeed, the plaintiff does not argue that the zoning inspection was unconstitutional *per se,* and the Zoning Ordinance expressly states that the "Zoning Administrator" is responsible for "requesting the Commissioner of Buildings to conduct inspections of buildings, structures, and uses of land to determine compliance with the terms of this Zoning Ordinance" and provides for "Zoning Inspectors." Chi. Mun. Code, § 17-14-0202-C; *see also id.* § 17-14-0501-A (stating that the Commissioner of Buildings has the responsibility and duty to "conduct[] inspections of buildings, structures, and uses of land to determine compliance with the terms of this Zoning Ordinance"); *id.* § 17-17-02196 ("Zoning Inspector. A municipal employee supervised to issue citations for code violations and *conduct inspections of*

9

*public or private real property in Chicago to determine if code violations exist.*" (emphasis added)). But more importantly, Myers has failed to adduce any evidence that Scudiero directed or knew that Hoskins and Samples would conduct their inspection without consent, or that Scudiero was deliberately and recklessly indifferent to the risk that the inspectors would engage in misconduct.

Similarly, Myers contends that Scudiero instructed Hoskins to conduct the inspection at Moore's behest. Pl. Resp., Dkt. 120 at 4. And, Myers alleges, Moore requested that inspection as part of his personal vendetta against the plaintiff. *Id.* But even if true, these facts would not suffice to show that either Scudiero or Moore knew (or were deliberately indifferent to the risk) that the inspectors would conduct the inspection in an unconstitutional manner. And even if these facts could support an inference that Moore or Scudiero knowingly, or with reckless indifference, instructed Hoskins and Samples to inspect the Subject Property without the plaintiff's consent, Myers has failed to support these allegations with admissible record evidence. Instead, the plaintiff cites to the allegations of his first amended complaint. *See id.* at 3-4. As the Seventh Circuit has repeatedly held, however, such conclusory allegations devoid of factual support are insufficient to preclude summary judgment. *See, e.g., Shermer v. Ill. Dep't of Transp.,* 171 F.3d 475, 478 (7th Cir. 1999) ("[A] non-moving party may not rely solely on the allegations in his complaint to defeat summary judgment." (citing *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Weicherding v. Riegel,* 160 F.3d 1139, 1142 (7th Cir. 1998)); *see also Gessert v. United States,* 703 F.3d 1028, 1035 (7th Cir. 2013) ("[C]onclusory allegations devoid of factual support do not preclude summary judgment." (citing *Ozlowski v. Henderson,* 237 F.3d 837, 840 (7th Cir. 2001); *Montgomery v. Am. Airlines, Inc.,* 626 F.3d 382, 389 (7th Cir. 2010)

("[M]ere conclusory allegations do not constitute evidence." (citing *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.,* 328 F.3d 309, 320 (7th Cir. 2003))).

Myers also points to the fact that the affidavits of Hoskins and Samples submitted by the defendants do not "explain[] when, where, or the manner in which plaintiff allegedly consented to the search." Pl. Resp., Dkt. 120 at 4. While Myers's point is accurate, it is irrelevant. For purposes of this motion, the defendants have assumed that there was no consent; the inquiry here is not whether the search was constitutional but whether the defendants knew about, condoned, or turned a blind eye to an unconstitutional search. As to that question, Myers has offered no evidence to create a triable issue of fact as to whether Moore or Scudiero knowingly or with deliberate, reckless indifference caused the plaintiff to suffer a constitutional deprivation. *See, e.g., Carroll v. Lynch,* 698 F.3d 561, 565 (7th Cir. 2012) ("[The plaintiff] cannot rest on metaphysical doubt that [the defendant engaged in misconduct] but must produce evidence so showing." (citation and internal quotations omitted)). Accordingly, the defendants' motion for summary judgment as to the individual claims against Defendants Moore and Scudiero is granted.

### B.  *Monell* Claim Against the City of Chicago

As with the individual claims against Moore and Scudiero, "[i]t is not enough [for Myers] to assert that the municipality is responsible under a theory of *respondeat superior.*" *King v. Kramer,* 680 F.3d 1013, 1020 (7th Cir. 2012) (citing *Monell v. Dep't of Soc. Srvs.,* 436 U.S. 658, 691 (1978)). "To establish municipal liability, a plaintiff must show the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights." *Teesdale v. City of Chi.,* 690 F.3d 829, 833-34 (7th Cir. 2012) (citing *Estate of Sims v. Cnty. of Bureau,* 506 F.3d 509, 514 (7th Cir. 2007) (quoting *City*

*of Canton v. Harris,* 489 U.S. 378, 389 (1989))). "A plaintiff can establish an official policy through '(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.'" *Id.* at 834 (citing *Estate of Sims,* 506 F.3d at 515 (citing *Lewis v. City of Chi.,* 496 F.3d 645, 656 (7th Cir. 2007))).

In this case, Myers has not presented evidence, argued, or even alleged that the City had either an express policy or a custom or practice of City inspectors conducting inspections of property without the property owner's consent. *See* Pl. Resp., Dkt. 120 at 6-7. Instead, Myers bases his claim solely on the third possibility—that his alleged constitutional violation was caused by the directives of Moore and Scudiero, who both had final policymaking authority. *See id.* But even assuming for purposes of this motion that the defendants are officials with final policymaking authority and that the plaintiff suffered a constitutional deprivation, Myers's claim fails for the same reason as his claim against Moore and Scudiero—he has produced no evidence that demonstrates that either Moore or Scudiero directed the inspectors to conduct an inspection of the Subject Property without his consent. And in order "to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights," as Myers alleges here, "the plaintiff must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Rasche,* 336 F.3d at 599 (some internal quotations omitted) (citing *Comm'rs of Bryan Cnty. Okl. v. Brown,* 520 U.S. 397, 407 (1997)).

As noted above, it is undisputed that Moore and Scudiero did not enter the Subject Property themselves, were not present for the inspections, and did not direct the City inspectors

to inspect or search the property without Myers's consent. Merely directing the inspectors to conduct an inspection of the Subject Property, without more, is insufficient to create a triable issue of fact concerning the City's liability under § 1983, just as it is insufficient to create a triable issue of fact concerning the defendants' individual liability. Myers has presented no evidence that either Moore or Scudiero knew that directing Hoskins and Samples to inspect the Subject Property would "pose a substantial risk" of a constitutional violation. *See, e.g., Wragg,* 604 F.3d at 469 (citing *Frake v. City of Chi.,* 210 F.3d 779, 782 (7th Cir. 2000); *Brown,* 520 U.S. at 407 (finding that municipal liability attaches only where the final policymaker acts "with deliberate indifference as to…known or obvious consequences" (internal quotation marks omitted)); *Riccardo v. Rausch,* 375 F.3d 521, 526 (7th Cir. 2004) (noting that the "deliberate indifference" standard requires "subjective awareness…[i]t is not enough that the [defendant] *ought* to have recognized the risk." (emphasis in original))). There is simply no evidence to support an inference that when Moore or Scudiero requested or directed that an inspection take place at the Subject Property, they did so with deliberate indifference to the risk that the City inspectors would violate the plaintiff's constitutional rights. Accordingly, the defendants are entitled to summary judgment on Myers's *Monell* claim against the City.

\* \* \*

Because the plaintiff has failed to adduce evidence to support a reasonable inference that either Moore or Scudiero knowingly or with deliberate, reckless indifference caused Hoskins and Samples to inspect the Subject Property in an unconstitutional manner, his claims against the defendants fail as a matter of law. Accordingly, the defendants' motion for summary judgment is granted in its entirety.

Entered: August 22, 2013

_____
John J. Tharp, Jr.
United States District Judge